IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

LISA NELSON,             )
             )
      Plaintiff,       )
             )
v.              )      CASE NO.: 2:17-cv-00590-ECM
             )            (WO)
HEALTH SERVICES, INC.,  )
             )
      Defendant.    )

**MEMORANDUM OPINION and ORDER**

## I.     INTRODUCTION

The Plaintiff, Lisa Nelson ("Nelson" or "the Plaintiff"), filed this suit against her employer, Health Services, Inc. ("HSI" or "the Defendant"), on September 1, 2017, claiming one count of retaliation pursuant to Title VII and two counts of disparate treatment due to her race pursuant to Title VII and 42 U.S.C. § 1981. Now pending before the Court is HSI's motion for summary judgment filed on January 15, 2021. (Doc. 69). Nelson has filed a response in opposition to the motion, (doc. 73), and the motion is ripe for review.

For the following reasons, the Court concludes that the motion for summary judgment is due to be GRANTED.

## II.     JURISDICTION

The Court exercises federal subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331, 1343(a)(3), and 42 U.S.C. § 2000e-5(f)(3).

Personal jurisdiction and venue are uncontested.

### III.   SUMMARY JUDGMENT STANDARD

A reviewing court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).  The movant can meet this burden by presenting evidence demonstrating there is no dispute of material fact, or by showing that the non-moving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id*. at 322–23.  Only disputes about material facts will preclude the granting of summary judgment. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 249 (1986).  "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. . . . An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248).

Once the movant has satisfied this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-movant must support his assertions "that a fact cannot be or is genuinely disputed" by

"citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the non-movant. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). Likewise, the reviewing court must draw all justifiable inferences from the evidence in the nonmoving party's favor. *Anderson*, 477 U.S. at 255. However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam).

A reviewing court is constrained during summary judgment proceedings from making the sort of determinations ordinarily reserved for the finder of fact at a trial. *See Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

## IV.   FACTS

Nelson, a Black female, began working for HSI in the 1990's, and her undisputed work history suggests that she was a dependable employee. Over the years, Nelson was

promoted numerous times, with regular increases in her salary. (Doc. 70 at 8–9).[1]   The

Parties discuss these promotions and raises in detail, but there are two key material facts

from her early employment history: (1) Nelson began filling in as the interim Human

Resources Director as early as 1998, (doc. 71-2 at 18), and (2) she was promoted to

Executive Administrative Assistant to the CEO in 2000, (doc. 70 at 8).   After 1998, Nelson

either acted as the interim Human Resources Director or assisted the Human Resources

Director as needed.   For example, she acted as the interim Human Resources Director

during "vacations, pregnancies, [and] maternity leave" of the Human Resources Director,

and she "maintained the department" when the position was vacant. (Doc. 71-2 at 19).

Even when there was a Human Resources Director, Nelson sometimes was asked to take

on the role anyway: in her deposition, she stated that she handled the firing of forty-one

people when the then Human Resources Director "couldn't handle it." (*Id.* at 20).

### A.  The sexual harassment report

It is undisputed that in June 2015, Nelson served in three roles: she was (1) the

Executive Administrative Assistant to the CEO, (2) the Facilities Supervisor, and (3) the

interim Human Resources Director. (Docs. 70 at 9; 71-1 at 23).   On or about June 25, 2015,

Nelson was acting in those roles when the then-COO, Bianca Granger ("Granger"), came

to Nelson with a sexual harassment complaint.   Specifically, Granger reported that she had

attended a business trip with a member of HSI's Board of Directors, Gilbert Darrington

("Darrington"), a Black male.   According to Granger, Darrington had asked her to visit his

---

[1] The Court will refer to the page numbers generated by CM/ECF.

room during the trip.  Granger stated that when she visited Darrington's room, he began running his fingers through her hair.  When Granger made the allegation, both Darrington and Granger were under consideration to become HSI's new CEO. (Doc. 70 at 11).

It is also undisputed that Nelson brought Granger's report to management's attention in her capacity as interim Human Resources Director.  In her deposition, Nelson stated, "I told [Granger] as the acting HR director that I was going to have to report it." (Doc. 71-2 at 32).  Nelson reported the complaint to the vice chair of the Board of Directors, who told her not to bring the complaint to the CEO at that time.  Nelson then reported the incident to two other Board members.  One of the Board members "gave [her] permission" to report the complaint to the CEO, and he offered to make the report himself.  Nelson explained, "I asked him to let me report it so that I didn't look weak, like I could not do my job." (*Id.* at 33).  Nelson also reported the incident to HSI's attorney, who told her that she was required to report it.  Nelson reported the incident to the CEO. (*Id.*).  And from there, the CEO and Nelson interviewed Granger, and some investigation took place. (*Id.* at 33–35).  After the investigation ended, Darrington was hired as the new CEO.

## B.  The Plaintiff's employment changes

On October 19, 2015, Darrington became the new CEO of HSI. (Docs. 42 at 3; 70 at 9). Darrington undertook a "corporate reorganization" at that time.  Nelson expressed to him her desire to become the permanent Human Resources Director.   Darrington previously had worked as the Human Resources Director of Jackson Hospital, and, according to HSI, Darrington's experience made him believe the position of Human Resources Director was no longer necessary—he could fulfill the obligations himself.

Thus, on November 16, 2015, Nelson arrived to work and learned of several changes: (1) the position of Human Resources Director had been eliminated—it had been replaced with a subordinate, lower-paying role, called the "Human Resources Manager;"[2] (2) she was being re-assigned to be the Executive Assistant to the COO instead of the CEO; and (3) her annual pay had been cut by around twenty thousand dollars per year. (Doc. 55 at 3).   Furthermore, "Health Services eliminated . . . six positions (resulting in the termination of eight employees), HSI "transitioned two positions to different titles with reduced pay," and "Health Services realigned, reorganized and renamed other positions during the reorganization." (Doc. 70 at 11–12).

Nelson filed a charge with the Equal Employment Opportunity Commission ("EEOC") in 2016, claiming that the employment actions affecting her were taken in retaliation for her having reported Granger's sexual harassment complaint. (Doc. 71-2 at 306–07).   She supplemented her EEOC charge in 2016, alleging race discrimination and retaliation. (*Id.* at 313–14).   Next, she filed this lawsuit in 2017, alleging race discrimination and retaliation. (Doc. 1).

On April 23, 2018, HSI fired the then-COO, Granger, for whom Nelson worked as the Executive Administrative Assistant. (Doc. 70 at 15).   Nelson consequently had no one to assist.   That same day, Nelson was temporarily assigned to work as the Executive Assistant to the Director of Nursing.   It is undisputed that Nelson's temporary role required

---

[2] The Human Resources Manager position required a bachelor's degree.   It was filled by Judi Herrera, who has a bachelor's degree.   Nelson does not have a bachelor's degree.   Nelson also testified in her deposition that she did not want the Human Resources Manager position because it would have resulted in a reduction in pay. (Doc. 71-2 at 30).

her to report to a different HSI facility.  Nelson claims that, initially, she did not have a work station, telephone, computer, or office furniture. (Doc. 73 at 6).  Further, she asserts that she worked on a new set of administrative tasks, particularly ones for which she was not trained or qualified to perform.  Nelson filed another charge with the EEOC in May 2018, alleging that she was transferred to this new position in retaliation for engaging in protected activity, namely reporting an employee's complaint of sexual harassment, for filing her original EEOC charge, and for filing this lawsuit. (Doc. 71-2 at 327–28).  On June 8, 2018, Nelson was permanently reassigned to the position of Executive Assistant to the Director of Nursing with the same pay.

 Nelson's deposition for this lawsuit was taken on October 10, 2019.  She requested paid administrative leave to prepare for, attend, and recover from the deposition.  While her request for paid administrative leave was initially granted by her supervisor, it was later rescinded.  She used annual and sick leave instead. (Doc. 73 at 7).  Nelson filed another EEOC charge of discrimination on November 14, 2019, complaining that she was denied paid administrative leave in retaliation for reporting an employee's sexual harassment complaint and for filing a lawsuit against HSI. (Doc. 71-5 at 2).

Nelson also filed amended complaints on September 16, 2019, (doc. 38), October 7, 2019, (doc. 42), and then again on May 12, 2020, (doc. 55).  In her operative complaint, Nelson brings claims for race discrimination and retaliation arising out of the employment actions taken in 2015, 2018, and 2019.

## V.   DISCUSSION

### A.  Count One – Title VII Retaliation

Nelson alleges that HSI retaliated against her in violation of Title VII, 42 U.S.C. § 2000e-5(f)(3), when her job and salary changed in 2015, when she was re-assigned to a different position in 2018, and when she was denied paid administrative leave in 2019. (Doc. 55 at 5).   Nelson alleges that Darrington knew she reported Granger's sexual harassment complaint in 2015, that he "continued to harbor ill will" against her, and that he refused to consider her for another position in the company because he had previously stated that "she could not be trusted." (Doc. 73 at 6).   She claims her job changes in 2015 were retaliatory in nature, and "corporate reorganization" is just pretext.   She further claims that her job change in 2018 was retaliatory, as was the denial of paid administrative leave in 2019.   Nelson does not present direct evidence but instead relies on circumstantial evidence to support her claims.

"Title VII prohibits an employer from retaliating against an employee 'because [s]he has opposed any practice made an unlawful employment practice ... or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'" *McCann v. Tillman*, 526 F.3d 1370, 1375 (11th Cir. 2008) (quoting 42 U.S.C. § 2000e-3(a)).   The two retaliation prohibitions are referred to as the "participation clause" and the "opposition clause." *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 274 (2009).   The Supreme Court has held that "oppose" carries its ordinary meaning, and the Court assumes "participate" does as well. *Id.* at 276.   "Oppose" therefore means "to be hostile or adverse to, as in opinion,"

to an unlawful employment practice. *Id.* (quoting Random House Dictionary of the English Language 1359 (2d ed. 1987)), whereas "participate" can be defined as "[t]he act of taking part in something . . . ." *Participation*, BLACK'S LAW DICTIONARY (11th ed. 2019).

To establish a prima facie case of retaliation, Nelson must show that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to her protected activity. *See Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1196 (11th Cir. 1997); *McMullen v. Tuskegee Univ.*, 184 F. Supp. 3d 1316 (M.D. Ala. 2016).

If Nelson makes out a prima facie case, the burden shifts to HSI under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The burden shifts to HSI to "rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action." *Raney*, 120 F.3d at 1196 (quoting *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993)).  If HSI successfully rebuts the presumption, then the presumption drops from the case. *Id.*  Nelson must then "raise a genuine factual issue as to whether the defendant's proffered reason is a pretextual ruse to mask a retaliatory action." *Id.*  Nelson's burden is to proffer evidence that "*could* allow a jury to find . . . that the plaintiff has established pretext." *Hairston*, 9 F.3d at 921.

### 1. *2015 job change*

The Court turns first to Nelson's retaliation claim relating to her 2015 job changes. She alleges that she suffered adverse employment actions when she was removed from the Human Resources Director position, when her pay was reduced, and when she was moved from the position of Executive Administrative Assistant to the CEO to that of the COO.

She alleges that those adverse employment actions constituted retaliation for her report of Granger's sexual harassment complaint. (Doc. 55 at 5).

### a. The prima facie case

Nelson asserts that she engaged in a protected activity when she reported Granger's sexual harassment complaint to the Board of Directors and CEO.  HSI argues that because Nelson reported Granger's complaint in her capacity as the acting Human Resources Director, she was not engaged in a protected activity under the "manager rule" set out in *Brush v. Sears Holding Corp.*, 466 F. App'x 781 (11th Cir. 2012).

The manager rule provides, "a management employee that, in the course of her normal job performance, disagrees with or opposes the actions of an employer, does not engage in 'protected activity.'" *Brush*, 466 F. App'x at 787.  "[T]he employee engages in a protected activity if she crosses the line from being an employee performing her job, to an employee lodging a personal complaint." *McMullen*, 184 F. Supp. 3d at 1322.  Or, "[the] requirement of 'stepping outside' a normal role is satisfied by showing that the employee took some action against a discriminatory policy.'" *E.E.O.C. v. HBE Corp.*, 135 F.3d 543, 554 (8th Cir. 1998).  Finally, a disinterested party cannot typically use another employee's harassment complaint as the party's own basis for a Title VII action. *Brush*, 466 F. App'x at 787.

Several cases are instructive on the application of the manager rule.  In *Brush*, the plaintiff brought a retaliation claim against her employer and argued her actions were protected under Title VII's opposition clause. *Id.* at 783–84.  When a lower-level employee reported that she had been raped by her supervisor, the plaintiff—a manager—repeatedly

opposed her employer's approach to handling the complaint, arguing that the complaint should be reported to the police. *Id.* The plaintiff later was fired, and she alleged retaliation for her disagreement with the way in which the employer handled the rape complaint. However, the court found that she did not engage in a protected activity, but instead acted within her role as a manager. Consequently, the manager rule applied, and the court found that she failed to establish a prima facie case.

Likewise, in *McMullen v. Tuskegee University*, the plaintiff worked as the Director of Human Resources for Tuskegee University, and she opposed the firing of a particular employee. 184 F. Supp. 3d at 1324. When the plaintiff herself was fired, she alleged that she was retaliated against for her opposition to the University's actions. In considering her allegation, the court reviewed several statements: the plaintiff's testimony in her own deposition that "it was part of her job duties" to make comments on hiring and firing; her brief, which read that "advising on termination decisions" was part of the plaintiff's work; and her Responses to Interrogatories, in which she stated that her opposition to firing the employee was "advice." *Id.* Considering that evidence, the court found that the plaintiff's allegedly protected actions were indistinguishable from those taken in her normal Director of Human Resources role. *Id.* Thus, the manager rule applied, and her actions did not constitute protected activity. *Id.* at 1235.

Furthermore, in *Fletcher v. Supreme Beverage Co.*, 2014 WL 5518294, (N.D. Ala. Oct. 31, 2014), the plaintiff, a human resources manager, also tried and failed to bring a retaliation claim based on Title VII's participation clause. He claimed he had been demoted in retaliation for reporting other employees' complaints about unequal pay. *Id.* at

*15.  Upon a review of the plaintiff's management role and his testimony, the court found, "[a]t the most, [the plaintiff] passed to upper management information about complaints of racial discrimination from lower level . . . employees." *Id.* at *15.  The plaintiff's job, therefore, required him to make exactly the kind of reports to upper management that he claimed he was retaliated against for making.  Thus, his actions were not protected—they were just part of his job. *Id.* at *17.

### b.  Failure to establish a prima facie case of retaliation in 2015

In her briefing on the motion for summary judgment, Nelson asserts that her actions constitute protected activity. (Doc. 73 at 11).  However, the evidence shows that Nelson's reporting of the sexual harassment claim to Board members, the CEO, to legal counsel, and to any other members of the Human Resources department was performed pursuant to her job duties as acting Human Resources Director.  According to HSI's "Personnel Policies and Procedures Manual," employees are told to direct sexual harassment complaints to any member of management. (Doc. 71-1 at 19).  Claims then travel up the chain of command to the CEO.  (*Id.* at 62–63).  "The CEO, with the HR Department, is responsible for finalization of unresolved issues." (*Id.* at 68–69).  Nelson therefore was operating within her job description and within the terms of the company's policies when she reported the allegations against Darrington.

Indeed, Nelson acknowledged that when Granger made the complaint to her, "I told her as the acting HR director that I was going to have to report it," (doc. 71-2 at 32), and she insisted on making the report to the CEO herself when a Board member offered to make the report for her, (*id.* at 33).  Like the plaintiff in *McMullen* who acted as Director

of Human Resources, 184 F. Supp. 3d at 1324, and similar to the human resources manager in *Fletcher*, 2014 WL 5518294, at *17, Nelson also acted according to her job responsibilities when she reported the complaint of sexual harassment.   Furthermore, Nelson relied on HSI's legal counsel in determining whether she was obligated to report the incident: " Plaintiff sought and obtained legal advice from HSI's counsel about whether she should report the incident Granger reported to her. HSI's counsel, Rick Howard, advised Plaintiff to report the incident." (Doc. 73 at 18).   In keeping with company policy, Nelson helped the CEO investigate the complaint: "[the CEO] interviewed Bianca Granger about the 2014 incident between her and Darrington. . . . Plaintiff was present. Plaintiff's notes from the meeting between Granger and [the CEO] became the written report of the meeting." (Doc. 73 at 3–4).   It follows, therefore, that reporting a sexual harassment complaint as part of her job as interim Human Resources Director falls within Nelson's "normal job performance." *Brush*, 466 F. App'x at 787.   Under the facts presented, the Court concludes that the manager rule applies, and Nelson fails to establish she engaged in a protected activity in 2015.   Accordingly, ,Nelson cannot establish a prima facie case of retaliation as it relates to the employment actions taken in 2015, and that claim is due to be dismissed.

2.   *2018 job change and 2019 denial of paid administrative leave*

Next, the Court considers Nelson's retaliation claim relating to her 2018 job reassignment, and her retaliation claim regarding HSI's denial of paid administrative leave for her deposition in 2019.   She alleges that she suffered an adverse employment action in 2018 when she was reassigned from Executive Assistant to the COO to the position of the

Executive Assistant to the Director of Nursing. She also claims she suffered an adverse employment action when she was denied paid administrative leave in 2019. She asserts that the adverse employment actions constituted retaliation for her report of Granger's sexual harassment complaint and for her own allegations of race discrimination and retaliation. (Doc. 55 at 5) ("In reporting the alleged sexual harassment reported to her by Bianca Granger and initiating an investigation, Plaintiff was opposing a perceived illegal work practice. In filing this civil action, Plaintiff was opposing a perceived illegal work practice.").

To establish a prima facie case of retaliation based on her 2018 job change and 2019 denial of paid administrative leave, Nelson must show that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to her protected activity. *See Raney*, 120 F.3d at 1196. As previously discussed, Nelson's report of Granger's sexual harassment complaint is not a protected activity under Title VII because she operated within the scope of her normal employment role. *See Brush*, 466 F. App'x at 787. However, both filing a complaint with the EEOC and filing a lawsuit are protected activities. *See, e.g., Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 569 (6th Cir. 2019) ("[F]iling an EEOC complaint or filing a lawsuit are protected activities under Title VII."); *Forkkio v. Powell*, 306 F.3d 1127, 1132 (D.C. Cir. 2002) ("[F]iling of complaints with the EEOC was protected activity . . . ."); *Johnson v. Booker T. Washington Broadcasting Serv., Inc.*, 234 F.3d 501, 507 (11th Cir. 2000) ("Statutorily protected expression includes filing complaints with the EEOC and complaining to superiors about sexual harassment."); *Tolar v. Marion Bank & Trust, Co.*,

378 F. Supp. 3d 1103, 1122 (N.D. Ala. 2019) ("Filing a charge of discrimination with the EEOC or filing a subsequent Title VII lawsuit constitutes statutorily protected participation activity.").

Turning to the second prong of the prima facie case, Nelson must show that she suffered an adverse employment action in 2018 or in 2019. "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)  Therefore, "to constitute an adverse employment action for purposes of establishing a prima facie case [of retaliation], the action must be materially adverse from the standpoint of a reasonable employee, such that it would dissuade a reasonable employee from making a discrimination charge." *Williams v. Appalachee Ctr., Imc.*, 315 F. App'x 798, 799 (11th Cir. 2009) (citing *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 57).  This inquiry is necessarily fact-specific. *Etheridge v. Board of Trustees of Univ. of W. Ala.*, 2020 WL 4260598, at *15 (N.D. Ala. 2020).  Courts look to whether the complained of action is *materially* adverse—rather than trivial—and thus created real harm when reviewing the circumstances of the case. *Id.*

Nelson's 2018 job change may have been an adverse employment action; the denial of paid administrative leave in 2019 was not.  In 2018, Nelson was transferred from her position as the Executive Administrative Assistant to the COO to the Executive Assistant to the Director of Nursing.  While she did not suffer any loss in pay, Nelson asserts that she did not have the training, experience, or knowledge to perform her new job functions, and, accordingly, she did not perform well.  She also asserts that when she started, she had no work area, computer, or telephone.  HSI argues that Nelson was qualified for her

temporarily reassigned role because she had worked as an Executive Administrative Assistant for years, but it does not dispute that Nelson had new, unfamiliar job functions, or that she was not provided adequate equipment at the outset of her reassignment. (Doc. 70 at 16). Viewing these facts in a light most favorable to Nelson, the court finds that a reasonable employee could be dissuaded from engaging in a protected activity under such circumstances. *See Williams*, 351 F. App'x at 799. As such, the Court finds that Nelson has established that her reassignment in 2018 was an adverse employment action.

In contrast, being required to take annual and sick leave instead of paid administrative leave in 2019 was not an adverse employment action. HSI's policy provides that paid administrative leave is for activities that benefit HSI. (Doc. 70 at 18) ("From time to time, the CEO may elect to approve administrative leave for employee(s) when such leave is in the interest of the organization."). Moreover, while HSI's policy clearly states that a request for paid administrative leave must be made with the CEO, Nelson made it with her supervisor instead. Nelson fails to establish that paid administrative leave is an employment right to which she was entitled, nor does she establish that she suffered any attendant harm. *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 67. "[P]etty slights, minor annoyances, and simple lack of good manners" are not the type of actions that would deter reasonable employees who wish to engage in a protected activity. *Id.* Consequently, Nelson did not experience a materially adverse employment action that would "dissuade" other reasonable employees from registering their complaints. *See Williams*, 351 F. App'x at 799.

As for the third prong, Nelson does not establish that her job change in 2018 or that the denial of paid administrative leave in 2019 were causally connected to her protected activities.   Such a causal connection is established when the plaintiff shows that "the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999).   However, temporal proximity must be "close" in time. *Brooks v. Progress Rail Servs. Corp.*, 2020 WL 2198960, at *15 (N.D. Ala. 2020) (quoting *Gray v. City of Montgomery*, 756 F. Supp. 2d 1339, 1350 (M.D. Ala. 2010)).   And, crucially, the plaintiff "must establish that [ ] her protected activity was a but-for cause of the alleged adverse action by the employer." *Id.* (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 361 (2013)).

Nelson does not present any causal connection between her protected activities and the 2018 or 2019 events.   Nelson's explanation of the causal connection reads, in pertinent part,

> Darrington fired Bianca Granger on April 23, 2018, leaving Plaintiff with no one to assist in her role as Executive Assistant . . . . When Plaintiff arrived at her new job assignment at CFHC, the supervisor there had no knowledge that Plaintiff had been assigned to work at CFHC, had no equipment on which to work, no work station for her, and no office furniture for her. . . . The lack of any preparation on the part of HSI for Plaintiff's reassignment demonstrates that her reassignment was undoubtedly, a spur-of-the-moment decision made in spiteful retaliation.

(Doc. 73 at 33–34).   Nelson claims that her job change in 2018 was a "spur-of-the-moment" retaliatory action, yet her protected activities happened a year or more before that

reassignment.  In fact, she filed her first EEOC charge in 2016, and she filed her lawsuit in 2017, well before her job reassignment in 2018 or the denial of paid administrative leave in 2019.  Nelson thus presents no evidence that the 2018 or 2019 events were close in temporal proximity to when HSI became aware of her protected actions. *See*, *e.g.*, *Brooks*, 2020 WL 2198960, at *15 (finding that events happening a year apart were too distant in time to create a causal connection).  Accordingly, Nelson does not establish the requisite causal connection between the allegedly adverse events and her protected activities, and she presents nothing to suggest that her protected activities were the *but-for cause* of the 2018 and 2019 events.  Her prima facie case of retaliation fails as to her job reassignment in 2018 and the denial of paid administrative leave in 2019.

Yet, even assuming Nelson could present a prima facie case for the retaliation claims related to the 2018 and 2019 employment actions (and she does not), her claims would still fail under the *McDonnell Douglas* burden shifting analysis.  In that case, the burden shifts to HSI to "rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action." *Raney*, 120 F.3d at 1196 (quoting *Hairston*, 9 F.3d at 918).  HSI proffers legitimate reasons for Nelson's job change in 2018: HSI explains that Nelson was moved to work for the Director of Nursing in 2018 because the COO was fired, leaving Nelson—in her own words—"with no one to assist." (Doc. 73 at 33).  Moreover, HSI proffers a legitimate reason for denying paid administrative leave in 2019: Nelson undisputedly did not follow the proper procedure for requesting paid administrative leave nor was she eligible for it under HSI's policy. (Doc. 74 at 8).

HSI has successfully rebutted the presumption of retaliation, and the presumption drops from the case. Accordingly, Nelson must "raise a genuine factual issue as to whether the defendant's proffered reason[s] [are] a pretextual ruse to mask a retaliatory action." *Raney*, 120 F.3d at 1196. Nelson's burden is to proffer evidence that "*could* allow a jury to find . . . that the plaintiff has established pretext." *Hairston*, 9 F.3d at 921 (emphasis added). Nelson presents no such evidence. She argues that the fact that her new station was not equipped for her yet in 2018 reveals retaliation. However, this argument does not present a genuine factual issue to suggest pretextual ruse. At most, it suggests that the change was fast, which fits with the explanation that the COO—her immediate supervisor—had just been fired. As for the 2019 denial of paid administrative leave, Nelson presents no evidence to demonstrate pretext other than to argue that HSI ultimately denied her request. This does not reveal pretext, only that the CEO, as required by company policy, had the final say. In sum, no reasonable juror could find pretext.

Accordingly, Nelson fails to establish a prima facie case of Title VII retaliation for her 2015 job change, her 2018 job reassignment, or the denial of paid administrative leave in 2019. There is no genuine dispute of material fact, and summary judgment will be granted as to Count One.

**B. Counts Two and Three – Title VII and § 1981 Disparate Treatment**

Nelson also alleges disparate treatment in violation of Title VII and 42 U.S.C. § 1981 because of her race when her job changed in 2015 and 2018, and when she was

denied administrative leave in 2019.[3] (Doc. 55 at 6–10). However, a review of the summary judgment submissions reveals that Nelson likely abandons her disparate treatment claims, as she fails to address them in her response to the motion for summary judgment. (Doc. 73). In any event, the Court finds that Nelson's claims for race discrimination collapse at the prima facie phase of the analysis.

The standards for § 1981 and Title VII race discrimination claims are the same, so the Court analyzes these claims together. Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff suing under Title VII may establish discrimination through direct—evidence that proves a fact "without inference or presumption"—or circumstantial evidence. *Morris v. Emory Clinic, Inc.*, 402 F.3d 1076, 1081 (11th Cir. 2005) (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004)); *see also Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999). Nelson presents no direct evidence that HIS discriminated against her based on race. Because Nelson presents no direct evidence of discrimination, she instead must produce circumstantial evidence to demonstrate disparate treatment due to race.

---

[3] HSI argues that Nelson did not allege race discrimination in her EEOC charges related to her 2018 job change or the denial of paid administrative leave in 2019. Therefore, HSI asserts that Nelson failed to exhaust her administrative remedies on her Title VII race discrimination claims relating to those events. (Doc. 70 at 6). While the Court agrees that it does not appear as though Nelson exhausted her administrative remedies for the 2018 and 2019 events for the purposes of Title VII race discrimination, this is not a basis for dismissal of her race discrimination claims pursuant to § 1981. Nelson's failure to present a genuine issue of material fact as to her race discrimination claims under Title VII or § 1981 pretermits discussion of this issue.

When a plaintiff relies on circumstantial evidence, the summary judgment analysis for both Title VII and 42 U.S.C. § 1981 follows the previously discussed *McDonnell Douglas* burden-shifting framework.  At the initial step, Nelson must establish a prima facie case of racial discrimination by showing:  "(1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably." *Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019).  If Nelson establishes these factors, the burden would then shift from her to HSI "to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* at 1221.  If HSI satisfies its burden, then Nelson must show that HSI's proffered reason was pretextual. *Id.*

First, as a Black female, Nelson is a member of a protected class.  Second, the Parties agree she was subjected to an adverse employment action when she was demoted in 2015.  They dispute whether her job change in 2018 and the denial of administrative leave in 2019 were adverse employment actions. *Compare* (doc. 70 at 27–29) (HSI argues that Nelson did not experience an adverse employment action in 2018 or 2019), *with* (doc. 55 at 8) (Nelson alleges, "[t]hese failures to hire, reduction in pay, transfer to a position for which she was not qualified, and requiring her to take annual and sick leave for the time she spent preparing for, giving, and recovering from her deposition in this case were adverse employment actions . . . .").  However, the Court has already determined that the 2018 reassignment could constitute an adverse employment action.

The third prong of the prima facie case is also in dispute. Starting with the job change in 2015, HSI disputes whether Nelson was qualified to become the Human Resources Manager, the new position established when the Human Resources Director position was eliminated. HSI asserts that the new position required a bachelor's degree, (doc. 71-1 at 4), which Nelson did not have, (doc. 71-2 at 11), making her unqualified for the position. Nelson makes no response to the claim that she was not qualified. When it comes to the change in 2018, the Court will assume Nelson was qualified to remain the Executive Administrative Assistant to the COO because she had performed in that position for three years. As for the refusal of administrative leave in 2019, Nelson offers little to explain how she was qualified for such leave. (Doc. 73 at 7–8, 31–32).

But even assuming that Nelson experienced adverse employment actions in 2015, 2018, and 2019, *and* that she was qualified for the roles or leave she sought, she fails entirely to present any evidence of a similarly situated employee outside of her class who was treated more favorably. "A plaintiff proceeding under *McDonnell Douglas* must show that she and her comparators are 'similarly situated in all material respects.'" *Lewis*, 918 F.3d at 1226. Similarly situated employees will likely have "engaged in the same basic conduct (or misconduct)," have been "subject to the same employment policy, guideline, or rule," have worked "under the jurisdiction of the same supervisor," and have shared the same employment or disciplinary history. *Id.* at 1227–28. Nelson has offered no comparators to any of her roles. (Docs. 70 at 39; 73). In fact, the individual who replaced Nelson as Executive Administrative Assistant to the CEO in 2015 was another Black

female.  And the newly established, lower paying position of Human Resources Manager was filled by a woman with a very different set of credentials and experiences than Nelson.

However, Nelson could still demonstrate a genuine issue of material fact by presenting "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (quoting *Silverman v. Bd. Of Educ.*, 637 F.3d 729, 734 (7th Cir. 2011)).  A convincing mosaic might include "evidence that demonstrates, among other things, (1) 'suspicious timing, ambiguous statements . . . , and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis*, 934 F.3d at 1185 (ellipses in original) (quoting *Silverman*, 637 F.3d at 733–34).  Nelson points to no evidence that would be relevant to a convincing mosaic analysis for race discrimination.  At most, she presents evidence that Darrington had said Nelson could not "be trusted" in a finance position at HSI, (doc. 73-3), which does not point to race discrimination or create a convincing mosaic of circumstantial evidence of intentional discrimination.  Without any such evidence of race discrimination, Nelson's disparate treatment claims are wholly conclusory.[4]

In short, there is no prima facie case to be found.  Nor does Nelson present a convincing mosaic of circumstantial evidence that suggests race discrimination.  And

---

[4] This analysis applies with equal force to Nelson's retaliation claims if retaliation claims can survive summary judgment under a convincing mosaic theory. *See James v. City of Montgomery*, 823 F. App'x 728, 735 (11th Cir. 2020) ("Assuming, *arguendo*, but not deciding, that retaliation claims can survive summary judgment under a convincing-mosaic theory, . . . [the Plaintiff] did not create a convincing mosaic of circumstantial evidence that created a triable issue about the [Defendant's] retaliatory intent.").

without any such evidence, the Court does not find a genuine dispute of material fact as to whether Nelson was treated differently due to her race.  Because discrimination is the act of "treating like cases differently," *Lewis*, 918 F.3d at 1222, summary judgment is due to be granted on the Plaintiff's Title VII and § 1981 Disparate Treatment claims.

## VI.    CONCLUSION

This case presents no genuine dispute of material fact, and the Defendant is entitled to judgment as a matter of law.  Accordingly, it is

ORDERED that the Defendant's motion for summary judgment, (doc. 69), is GRANTED as to all counts.

Final judgment will be entered in favor of the Defendant against the Plaintiff.

DONE this 19th day of April, 2021.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE