IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LISA NELSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV. ACT. NO. 2:17cv590-ECM |
| | ) | (WO) |
| HEALTH SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

## I.    INTRODUCTION

This cause is before the Court on a motion for summary judgment (doc. 69) as to one of the claims of Plaintiff Lisa Nelson ("Nelson").  On April 19, 2021, this Court granted the motion for summary judgment filed by Defendant Health Services, Inc. ("HSI") as to all of Nelson's claims. (Doc. 81 & 82).  On July 26, 2022, the Eleventh Circuit Court of Appeals reversed the grant of summary judgment only as to Nelson's retaliation claim based on a position change and salary reduction in 2015, holding that its rejection of the "manager exception" in *Patterson v. Ga. Pacific, LLC*, 38 F.4th 1336 (11th Cir. 2022), required remand for consideration of HSI's other arguments for summary judgment. (Doc. 90 at 4).

## II.  JURISDICTION

The Court exercises subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331.  Personal jurisdiction and venue are uncontested.

## III.    LEGAL STANDARD

"Summary judgment is proper if the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (quoting FED. R. CIV. P. 56(a)). "[A] court generally must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016). However, "conclusory allegations without specific supporting facts have no probative value. *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018). If the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party," then there is no genuine dispute as to any material fact. *Hornsby-Culpepper*, 906 F.3d at 1311 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of demonstrating that there is no genuine dispute as to any material fact, and the movant must identify the portions of the record which support this proposition. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant may carry this burden "by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case." *Id.* The burden then shifts to the non-moving party to establish, by going beyond the pleadings, that a genuine issue of material fact exists. *Id.* at 1311–12.

## IV.   FACTS

The facts relevant to the claim remaining for consideration by this Court, viewed in a light most favorable to the non-movant are as follows:

In June 2015, Nelson was (1) the Executive Administrative Assistant to the CEO, (2) the Facilities Supervisor, and (3) the interim Human Resources Director of HSI. (Docs. 70 at 9; 71-1 at 23).  On or about June 25, 2015, Nelson was acting in those roles when the then-COO, Bianca Granger ("Granger"), came to Nelson with a sexual harassment complaint. Specifically, Granger reported that she had attended a business trip with a member of HSI's Board of Directors, Gilbert Darrington ("Darrington"), and he had asked her to visit his room during the trip.  Granger stated that when she visited Darrington's room, he began running his fingers through her hair.  At the time Granger made the complaint to Nelson, Granger and Darrington were both being considered for the position of CEO of HSI. (Doc. 70 at 11).  Nelson brought Granger's report to the vice chair of the Board of Directors, who told her not to bring the complaint to the CEO at that time.  Nelson then reported the incident to two other Board members. One of the Board members told her to report the complaint to the CEO, and he offered to make the report himself.  Nelson also reported the incident to HSI's attorney, who told her that she was required to report it. Nelson reported the incident to the retiring CEO, Bernell Mapp ("Mapp").  In her affidavit, Nelson states that she told Mapp that she believed Darrington's conduct should disqualify him from serving on the HSI board and that she did not believe he should become the HSI CEO. (Doc. 73-1 ¶29).  An investigation took place.  After the investigation ended, Darrington was hired as the new CEO.

When Darrington became the CEO, he undertook a corporate reorganization which resulted in the elimination of some positions and the termination of some employees. On November 16, 2015, Nelson arrived at work and discovered that (1) the position of Human

Resources Director had been eliminated and replaced with a subordinate, lower-paying role, called the "Human Resources Manager;" (2) she was being re-assigned to be the Executive Assistant to the COO instead of the CEO; and (3) her annual pay had been cut by around twenty thousand dollars per year. (Doc. 55 at 3).  Darrington promoted one employee to take Nelson's place as the Executive Administrative Assistant to the CEO, eliminated the Facilities Manager position, and promoted Judi Herrera ("Herrera") to Human Resources Manager.  Mapp testified in a deposition that the promotion of Herrera violated company policy because she had personnel write-ups. (Doc. 73-7 at 96: 1-23). Granger stated in an affidavit that months afterward, Darrington told her that they could not give Nelson any other position at HSI because she could not be trusted. (Doc. 73-3 at 4).

Nelson filed a charge with the Equal Employment Opportunity Commission ("EEOC") in 2016, claiming that the employment actions against her were taken in retaliation for her having reported Granger's sexual harassment complaint. (Doc. 71-2 at 306–07).

## V.    DISCUSSION

In its motion for summary judgment, HSI has challenged Nelson's ability to establish a prima facie case of retaliation, causation, and pretext as to the reason for, her transfer and demotion in 2015.  Upon remand from the Eleventh Circuit, in supplemental briefing allowed by the Court, HSI again challenges Nelson's prima facie case, causation, and pretext evidence.

HSI's argument as to the prima facie case has shifted in light of the Eleventh Circuit's holding that the manager exception HSI relied on in moving for summary judgment is not recognized in this circuit. *See Patterson*, 38 F.4th at 1348. Nelson argues, however, that the shift in argument is not allowed because the Eleventh Circuit did not give HSI leave to advance new grounds for summary judgment, but only remanded the case for consideration of HSI's previously briefed grounds.

Having given both parties an additional briefing opportunity upon remand, this Court will consider HSI's new argument that Nelson did not oppose an unlawful employment practice. In advancing this argument, HSI acknowledges that in *Patterson* the Eleventh Circuit held there was a question of a fact as to "opposition" of unlawful conduct, but argues that in this case there is no question of fact because Nelson received a report of alleged sexual harassment and reported it on behalf of HSI, not in opposition to HSI. Nelson responds that her testimony is that she told CEO Mapp that Darrington's conduct should disqualify him from serving on the HSI Board, which was in opposition.

In *Patterson*, an employee was terminated after her employer learned that she testified in a deposition regarding complaints of discrimination against the employee's former employer. 38 F.4th at 1349. The Eleventh Circuit first concluded that the employee could proceed on a retaliation claim against her employer even though she was opposing discrimination by a previous employer. *Id.* The court then held that there was a question of fact as to whether the employee opposed "any" unlawful employment practice because she testified that she opposed the discriminatory conduct while she was the HR manager

of her previous employer, which at least met the ordinary definition of "opposed," which includes "to contend against." *Id.* at 1347; 1349.

The Court concludes that this case falls within *Patterson* on the issue of "opposition."  Nelson has testified that when she reported Darrington's conduct to CEO Mapp, she voiced the opinion that Darrington was not suited to be on the Board or the CEO based on his conduct. (Doc. 73-1 ¶29).  This Court must conclude, therefore, that Nelson, like the plaintiff in *Patterson*, has presented evidence of action intended to "contend against" Darrington, a member of HSI Board, whom HSI was considering for the position of CEO. 38 F.4th at 1349.

As to the causation element of the prima facie case, HSI consistently has argued both that there is a lack of temporal proximity between the protected activity and the adverse employment action and that Nelson has failed to establish but-for causation.

The Eleventh Circuit sitting *en banc* has determined that a plaintiff claiming retaliation must establish the requisite causal connection at two stages:  the prima facie case and the pretext stage. *Gogel v. Kia Motors Mfg. of Ga., Inc*., 967 F.3d 1121, 1135 & n.13 (11th Cir. 2020)(*en banc*)("[W]e will assume here that the but-for test is to be applied at the pretext stage of the summary judgment examination, and our analysis so proceeds under this assumption.").  At the prima facie stage, the plaintiff must show "that the protected activity and the adverse action were not wholly unrelated." *Id.*  "At the stage of summary judgment proceedings in which the plaintiff must rebut the defendant's proffered nonretaliatory reason for its action, however, the plaintiff must meet the more demanding

'but for' test." *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1294 (11th Cir. 2021).  Therefore, this Court turns first to the "wholly unrelated" inquiry.

In *Patterson*, the court held that a decision maker's comment that the plaintiff having testified against her former employer made things "clear to him," was evidence that the employment decision was not wholly unrelated, as was the close temporal proximity of one week between the protected activity and the adverse employment action. 38 F.4th at 1351.  In its reasoning, the court also cited to a decision in which the temporal proximity of one month was considered as circumstantial evidence of causation. *Id.* (citing *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 601 (11th Cir. 1986)).

HSI's argument that the adverse employment action and the protected activity in this case were not sufficiently close in time is based on the length of time which elapsed between the arguably protected activity in June 2015 and the transfer of Nelson's job in November 2015.  Nelson argues, however, that because Darrington only became the CEO of HSI in October 2015, his decision to transfer Nelson's job and reduce her pay came within a month of his receiving the authority to make those decisions, establishing close temporal proximity.

This case can be analogized to one in which the decision-maker learns of the protected activity at date later than others in the corporation, so temporal proximity is measured from when the decision-maker gained knowledge, not the employer as a whole. *See, e.g., Stone v. Geico Gen. Ins. Co.*, 279 F. App'x 821, 824 (11th Cir. 2008)(invoking "rule that the protected activity must be known to the decision-maker who takes the adverse action" and holding that there was sufficiently close temporal proximity where decision-

maker learned of protected activity a month before terminating the plaintiff's employment). Here, the adverse employment action occurred the month after Darrington became CEO. Nelson presents evidence in the form of Granger's affidavit that Darrington told Granger that he knew Nelson had reported Darrington's purported harassment of Granger and later told Granger that Nelson could not be trusted.  (Doc. 73-3 ¶¶9,10).  This comment, like the comment in *Patterson*, could reasonably be viewed as a comment about Nelson's protected activity.  Given the one-month span of time and Darrington's comment, therefore, this Court cannot conclude as a matter of law that the adverse employment action and Nelson's opposition were wholly unrelated.

HSI offers the legitimate non-retaliatory reason for the adverse employment action against Nelson of a corporate restructuring during which some positions were eliminated and some employees terminated.  HSI argues that Nelson cannot show that this reason was false or that the real reason was retaliation.  According to HSI, Nelson's arguments to support pretext are only an attempt to substitute her business judgment for HSI's.

In *Patterson*, the employer articulated poor performance and excessive absences as legitimate non-discriminatory reasons for the plaintiff's firing. 38 F.4th at 1352.  The court explained that to show pretext, a plaintiff must show both that the reason was false and that retaliation was the real reason. *Id.*  A plaintiff cannot simply quarrel with the wisdom of a reason, but must demonstrate weaknesses, implausibilities, inconsistencies, or contradictions such that a reasonable factfinder could find them unworthy of credence. *Id.* The court found the following to be sufficient evidence of pretext:  the plaintiff's testimony about not missing a deadline that contradicted the reason given, evidence that undermined

a reliance on nonperformance on a work task, evidence that Georgia Pacific did not follow its usual procedure for reviewing attendance issues, evidence that Georgia Pacific did not follow its progressive discipline policy, a comment referencing her protected activity by the decisionmaker, evidence of positive work reviews, the fact that no reason was given for her termination but a reason was given to another employee, the offer to pay the plaintiff an amount of money if she did not bring a suit, and the temporal proximity of being fired one week after the decisionmaker learned of the protected activity. *Id.* at 1353-55.

In this case, Nelson argues in her supplemental briefing that the timing of the decision to change her position and reduce her pay, when viewed in relationship to Darrington's acquiring the authority to make the decision, is itself evidence of pretext under *Patterson*. Nelson also has pointed to the promotion of Herrera as evidence of pretext because Nelson argues that Herrera had personnel write-ups in her file so her promotion was a deviation from standard procedures. In his deposition, former CEO Mapp could not specify a policy, but testified that promoting Herrera in light of her performance evaluations violated HSI policy. (Doc. 73-7 at 96: 1-23). Nelson further has presented an affidavit by Granger in which she said that Darrington said that Nelson could not be given any other position at HSI because she "cannot be trusted." (Doc. 73-3 at 4).

The evidence Nelson has pointed to in the instant case is not as strong as the evidence of pretext presented in *Patterson*. In addition, this Court is mindful that it is not sufficient to establish pretext to question an employer's business judgment in deciding how to restructure a company. *See, e.g., Lockaby v. United Testing Grp., Inc*., 986 F. Supp. 1400, 1405 (N.D. Ga. 1997)("Whether it was sound business judgment for the employer to

make the employee part of a reduction in force is not a matter for the court to adjudicate."). However, the facts presented, when viewed in a light most favorable to the non-movant, are similar to some of the categories of pretext evidence in *Patterson* in that there was close temporal proximity between relevant actions; there is a question of fact as to whether the company followed its own policy in the hiring a replacement for duties formerly performed by Nelson; and the decision-maker, Darrington, made a comment about Nelson not being trustworthy that could be a considered a comment about her protected activity.[1]  This Court concludes, therefore, that a genuine issue of fact has been created as to pretext so as to preclude summary judgment as to the retaliation claim based on the adverse employment action taken against Nelson in 2015.

## VI.    CONCLUSION

For the reasons discussed, the motion for summary judgment is due to be and is hereby ORDERED DENIED as to Nelson's retaliation claim based on an adverse employment action taken in 2015.

The trial of this claim will be set by separate Order after a status conference with the parties.

Done this 13th day of February, 2023.


_____/s/Emily C. Marks_____
EMILY C. MARKS
UNITED STATES DISTRICT JUDGE

---

[1]  Although not called upon by the Eleventh Circuit to review other claims, in an abundance of caution, the Court has reviewed the evidence of pretext in the context of the other retaliation claims and concludes that the evidence of pretext is only sufficient to create a question of fact as to the reason given for the 2015 adverse employment action. Summary judgment is due to be GRANTED as to Nelson's other claims for the reasons given in the previous Memorandum Opinion and Order. (Doc. 81 & 82).